IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

KERRY LESLIE,                                        **DECISION AND**
A#044-845-427,                                       **ORDER**
                              Petitioner,

v.                                                   10-CV-00515(A)(M)

MARTIN HERRON, et al.,

                              Respondents.

_____

     Petitioner filed a petition under 28 U.S.C. §2241 *et. seq*., seeking, *inter alia*, a

writ of habeas corpus ordering his release from the custody of the Department of Homeland

Security, United States Immigration and Customs Enforcement ("DHS") on June 17, 2010 [1].[1]

On September 16, 2010, Hon. Richard J. Arcara referred this case to me pursuant to 28 U.S.C.

§636(b) for all proceedings necessary to determine the factual and legal issues presented, and for

preparation of a Report and Recommendation [9].


## BACKGROUND

     Petitioner is a native and citizen of Jamaica. Petition [1], ¶9. He entered the

United States on or about December 22, 1994, as a lawful permanent resident. Vaccaro

Declaration [7-2], ¶5. On or about September 15, 1998, petitioner was convicted in New York

State Supreme Court of criminal possession of stolen property in the 3rd degree, and was

sentenced to 5 years probation. Id., ¶6. He was subsequently convicted in New York State

Supreme Court of resisting arrest on or about March 19, 2003, and was sentenced to a term of

incarceration of 6 months. Id., ¶7.

_____

[1]     Bracketed references are to the CM/ECF docket entries.

Petitioner was placed in removal proceedings on July 14, 2003, and he was taken into the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS") shortly thereafter. Id., ¶¶9-10. Approximately one month later, he was released on bond. Id., ¶12. On March 28, 2006 and September 14, 2006, petitioner was convicted in New York Supreme Court of aggravated unlicensed operation of a motor vehicle and of criminal possession of stolen property in the 5th degree and was sentenced to 30 days and time served. Id., ¶14.

On July 23, 2007, petitioner was ordered removed to Jamaica *in absentia* by Immigration Judge Barbara Nelson. Id., ¶17; Ex. A, p. 15. On November 11, 2008, he was convicted in New York Supreme Court of bail jumping in the 3rd degree, and was sentenced to 60 days incarceration. Id., ¶18. He was then taken into DHS custody on November 25, 2009 and has been held since that time, pending his removal from the United States. Id., ¶19. DHS has reviewed petitioner's detention status on February 16 and June 30, 2010. Vaccaro Declaration [7-2], ¶24, Ex. A, pp. 2-7

To effectuate his removal, on December 3, 2009 DHS sent a presentation packet to the Consulate General of Jamaica to request a travel document for petitioner's removal. Id., ¶20. On December 21, 2009, petitioner filed a motion to reopen his removal proceedings with Judge Nelson, which was denied on January 4, 2010. Id., ¶¶21 and 22; Ex. A, pp. 12-13. However, he successfully moved to stay his removal during this period. Id., ¶21.[2]

---

[2] "While the alien's motion to reopen is pending, the INA provides for an automatic stay of deportation for aliens seeking to rescind an in absentia removal order." Chen v. Escareno, 2009 WL 3073928, *4 (S.D.Tex. 2009) (*citing* 8 U.S.C. §1229a(b)(5)(C); 8 C.F.R. §1003.23(b)(1)(v)). "The stay remains in effect until the immigration court rules on the motion to reopen." Id. (*citing* 8 U.S.C. §1229a(b)(5)(C)).

On January 25, 2010, petitioner appealed Judge Nelson's decision to the Board of Immigration Appeals ("BIA"); that appeal was dismissed on March 5, 2010. Id., ¶¶23 and 25. On April 1, 2010, he filed a petition for review of the BIA's order with the Second Circuit Court of Appeals, which was accompanied by a request for stay of removal. Id., ¶26. The Second Circuit's docket reflects that, to date, no determination has been made on petitioner's request for a stay. According to respondents, petitioner's removal has been effectively stayed pursuant to a standing agreement ("forbearance policy") between the United States Attorney General and the Second Circuit. See Vaccaro Declaration [7-2], ¶26.

Petitioner filed this petition on June 17, 2010 seeking an order granting a writ of habeas corpus for his immediate release from custody, or in the alternative, a "hearing where Respondents must demonstrate that Petitioner's continued detention is justified". Petition [1], Prayer for Relief.[3] He alleges that he has been detained longer than reasonably necessary to effectuate his removal, and that he has been deprived of a constitutionally adequate hearing and other procedural protections. Id., ¶¶36-50.

## ANALYSIS

### A.    Is Petitioner's Detention Governed by to 8 U.S.C. §1226 or §1231?

At the outset, I must determine whether petitioner's detention is pursuant to 8 U.S.C. §1226 or §1231. The petition treats his detention as being under §1226, whereas respondents consider his detention under §1231(a). Respondents' Memorandum of Law [8], p.

---

[3]    The petition also seeks to have respondents show cause why the petition should not be granted. Petition [1], Prayer for Relief. This aspect of the petition was denied by Judge Siragusa's June 29, 2010 Decision and Order [5].

4.  Petitioner became the subject of a final order of removal on July 23, 2007, when he was ordered removed to Jamaica *in absentia* by Immigration Judge Barbara Nelson.  Vacarro Declaration [7-2], ¶17, Ex. A, p. 15.  *See* Farez-Espinoza v. Chertoff, 600 F.Supp.2d 488, 499 (S.D.N.Y. 2009)("A removal order entered in the absence of the alien to whom it refers, such as the removal order at issue in this case, becomes administratively final immediately upon its issuance" *citing* 8 C.F.R. §1241.1(e)).

Because petitioner was the subject of an administrative final removal order at the time he was detained, his detention has  been pursuant to 8 U.S.C. §1231, which governs detention of aliens whose removal from the United States has been administratively ordered, rather than pursuant to 8 U.S.C. §1226, which governs detention "*pending a decision* on whether the alien is to be removed from the United States". 8 U.S.C. §1226(a) (emphasis added).  *See* Singh v. Holmes, 2004 WL 2280366, *4 (W.D.N.Y. 2004) (Foschio, M.J.).

Petitioner argues that "[m]ost circuit courts have found that the detention of individuals *whose removal order has been stayed pending judicial review* is governed not by §1231(a), but rather by 8 U.S.C. §1226 because in such instances the removal period has not yet begun".  Petition [1], ¶18 (emphasis added).  However, petitioner's removal order has not been stayed.  *See* D'Alessandro v. Mukasey, 628 F. Supp. 2d 368, 381-87 (W.D.N.Y. 2009) (Arcara, J./Bianchini, J.J.).[4]  Therefore, I will analyze petitioner's current detention under 8 U.S.C. §1231.

---

[4]  *Compare with* Aponte v. Holder, 2010 WL 3547702 *7 (W.D.N.Y. 2010) (Siragusa, J.) ("[F]or purposes of this action, the forbearance policy is the equivalent of a court-ordered stay of removal.  Consequently, the Court finds that petitioner is being detained pursuant to INA §236, and that his removal period has not yet begun").

**B.      Legal Standard**

"The removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). Once an order of removal against an alien becomes final, the Attorney General is generally required to remove the alien from the United States within 90 days. *See* 8 U.S.C. §1231(a)(1)(A). However, "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. §1231(a)(1)(C).

"In considering whether aliens have satisfied their obligations under §1231(a)(1)(C), 'courts look to whether they have undertaken overt actions to thwart removal, whether they can or have produced affidavits from friends and family to support their claims of nationality, whether they have requested travel documents from the country of intended removal, whether they have attempted to contact the country of intended removal's consulate, and/or whether they can or have provided the INS with requested documents.'" Hydara v. Gonzales, 2007 WL 2409664, *2-3 (D. Minn. 2007), aff'd, 324 Fed. Appx. 534 (8th Cir. 2009).

If the removal period has not been extended, 8 U.S.C. §1231(a)(6) governs post-removal detentions. §1231(a)(6) provides that "an alien ordered removed who is inadmissible under section 1182. . . , removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to

comply with the order of removal, may be detained beyond the removal period." Although

§1231(a)(6) does not set a limit on the length of detention beyond the removal period, the

Supreme Court  has held that "once removal is no longer reasonably foreseeable, continued

detention is no longer authorized by statute". <u>Zadvydas v. Davis</u>, 533 U.S. 678, 699 (2001).

Under <u>Zadvydas</u>, the first six months of detention following a final removal order[5] are

presumptively permissible. 533 U.S. at 701.  Once the six-month period has passed, the burden is

on the alien to "provide[ ] good reason to believe that there is no significant likelihood of

removal in the reasonably foreseeable future." <u>Id</u>.  Only then does the burden shift to the

government, which "must respond with evidence sufficient to rebut that showing".  <u>Id</u>.[6]

　　　　　"On one hand, to meet his burden the alien is not required 'to show the absence of

*any* prospect of removal - no matter how unlikely or unforeseeable.'  On the other hand, the alien

---

[5]　　　There is conflicting authority on whether the six-month period of presumptive permissibility accrues upon the final removal order or following the ninety-day removal period.  *See* <u>Juma v. Mukasey</u>,  2009 WL 2191247, 3 n.3 (S.D.N.Y. 2009) (citing cases).  *Compare* <u>Wang v. Ashcroft</u>, 320 F. 3d 130, 145-46 (2d Cir. 2003) (interpreting the <u>Zadvydas</u> six-month limit to accrue upon the final removal order); <u>Kassama v. Department of Homeland Security</u>, 553 F. Supp. 2d 301, 305 (W.D.N.Y. 2008) (Siragusa, J.)(same); <u>Arthur v. Gonzales</u>, 2008 WL 4934065, *13 (W.D.N.Y. 2008) (Siragusa, J.) ("The *Zavydas* [*sic*] six-month period includes the initial 90-day removal period, plus another 90 of days [*sic*] of additional time to effect the actual deportation"), *with* <u>Gordon v. Herron</u>, 2009 WL 909640, *4 (W.D.N.Y. 2009) (Skretny, J./Scott, M.J.) ("Under <u>Zadvydas</u>, the government can hold him only for up to six months as a presumptively reasonable period of detention following the initial ninety-day removal period"); <u>Gabriel v. Immigration and Customs Enforcement</u>, 2009 WL 1272291, *2 (W.D.N.Y. 2009) (Bianchini, M.J.), <u>report and recommendation adopted</u>, 2009 WL 2413674 (Siragusa, J.) ("<u>Zadvydas</u> recognized six months as a 'presumptively reasonable' period of time following the end of the 90-day removal period").  Despite these conflicting authorities, I am bound to follow the Second Circuit's decision in <u>Wang</u>.  In any event, as discussed <u>infra</u>, it appears that petitioner has been detained beyond either six or nine months. *See* Petition [1].

[6]　　　If the six months have passed and removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." <u>Zadvydas</u>, 533 U.S. at 700 (*citing* 8 U.S.C. §§1231(a)(3), 1253; 8 C.F.R. §241.5).

does not prevail merely be [*sic*] demonstrating the absence of a repatriation agreement between the U.S. and his home country." Kassama, 553 F. Supp. 2d at 305 (emphasis in original).

## C.      When Did the Removal Period Accrue?

Until the removal period is quantified, I cannot determine whether petitioner's current detention is constitutionally permissible and what procedural protections must be afforded to him.   Although not addressed by the parties,  I must first determine when the removal period accrued under 8 U.S.C. §1231(a)(1)(B).  As discussed above, petitioner became the subject of a final order of removal on July 23, 2007, when he was ordered removed to Jamaica *in absentia* by Immigration Judge Barbara Nelson.  *See* Farez, 600 F.Supp.2d at 499; 8 C.F.R. §1241.1(e).  Because the other triggering events under §1231(a)(1)(B) (lifting of judicial stay or release from custody) do not appear applicable on the record before me,  it appears that the removal period began on July 23, 2007.[7]  Therefore, absent tolling, any presumptively reasonable six-month period of detention respondents may have been entitled to would have long since expired during the last three years.

## D.      Do any Tolls Apply?

### 1.      Forbearance Policy

According to respondents, DHS is prevented from executing an immigration order of removal against petitioner while his request to stay remains pending with the Second

_____

[7]      Although petitioner was subsequently convicted of bail jumping and sentenced to 60 days incarceration on November 25, 11, 2008, it is unclear from the record when and if he served this sentence.  Vaccaro Declaration [7-2], ¶18. Thus, it is also unclear whether this would have tolled the accrual of the removal period.

Circuit due to forbearance policy. Vaccaro Declaration [7-2], ¶26, Respondents' Memorandum of Law [8], pp. 10-11. Therefore, respondents argue that the petition fails to state a claim upon which habeas relief can be granted, because petitioner's own actions are the cause of the delay and he has failed to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future. Respondents' Memorandum of Law [8], Points B and C.

The cases upon which respondents rely are readily distinguishable. In a majority of these cases, a formal stay was granted by the Circuit Court.[8] Under such circumstances, the removal period is tolled statutorily. *See* 8 U.S.C. §1231(a)(1)(B)(ii) ("If the removal order is judicially reviewed *and if a court orders a stay* of the removal of the alien, [the removal period begins on] the date of the court's final order." (emphasis added)). The remaining cases upon which respondents rely either pre-date Zadvydas,[9] do not involve petitioners subject to a final order of removal,[10] or do not constitute precedential authority.[11]

Respondents acknowledge Judge Arcara's recent decision in D'Alessandro cited by petitioner (petition [1], ¶27), which addressed whether an informal stay under the forbearance policy tolls the removal period. Respondents' Memorandum of Law [8], pp. 17- 18. Relying on

---

8       *See* Respondents' Memorandum of Law [8], pp. 12-13 (*citing* Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D.Pa. 2002); Evangelista v. Ashcroft, 204 F.Supp.2d 405, 409 (E.D.N.Y. 2002); Lawrence v. Gonzales, 446 F.3d 221, 227 (1st Cir.2006); Marcelus v. I.N.S., 2002 WL 80301, *1 (E.D.Pa.2002); Copes v. McElroy, 2001 WL 8306 73,*6 n. 12 (S.D.N.Y. 2001)).

9       *See* Respondents' Memorandum of Law [8], p. 13 (*citing* Doherty v. Thornburgh, 943 F.2d 204, 211 (2d Cir.1991); Dor v. District Director, INS, 891 F.2d 997, 1002 (2d Cir.1989)).

10      *See* Respondents' Memorandum of Law [8], p. 13 (*citing* Abassi v. Secretary, Department of Homeland Security, 2010 WL 199700, *3 (S.D.N.Y. 2010)).

11      *See* Respondents' Memorandum of Law [8], pp. 13-14, 16 (*citing* Sanusi v. I.N.S., 100 Fed. Appx. 49, 51 (2d Cir. 2004) (summary order); Abimbola v. Ridge, 181 Fed. Appx. 97, 99 (2d Cir. 2006) (summary order); Obikanyev. I.N.S., 78 Fed. Appx. 769 (2d Cir. 2003) (summary order)).

nearly the same arguments and authorities raised here, Judge Arcara rejected the argument that

the petitioner's "applications seeking a stay and petitioning for review justify his continued

detention simply because they have a practical effect on his actual removal. As petitioner points

out, '[i]n requesting a stay of removal, [petitioner] only sought to prevent his removal from the

county while he challenged his underlying convicting and the BIA's denial of his motion to

reopen removal proceedings. [Petitioner's] stay application was not a request to remain

incarcerated'". Id. at 386.

   Respondents having failed to make any attempt to distinguish D'Alessandro or

arguments  why its holding should not be followed here,  I find that the forbearance policy does

not toll the removal period.


   **2.**  **Were Respondents responsible for the Delay Between the Final Removal Order and Petitioner's Detention?**

   Petitioner's failure to appear for the removal proceeding, standing alone, is

insufficient to trigger an extension of the removal period under §1231(a)(1)(C). *See*

Farez-Espinoza,  600 F.Supp.2d at 501. "The Congressional intent underlying §1231 is for the

Attorney General to remove an alien subject to an order of removal within the 90-day removal

period, if possible. . . .  Thus, it is the responsibility of DHS to make a bona fide attempt to do so

within the removal period." Id. at 501. Consequently, where DHS has been aware of a

petitioner's whereabouts and petitioner has not absconded or otherwise attempted to avoid

enforcement of the removal order,  the removal period is not extended under §1231(a)(1)(C). *See*

id. at 500 ("At all times since her arrival in this country, Farez-Espinoza's address and

whereabouts have been on file with DHS and the Government has shown no reason why it did

not pursue removal of Farez-Espinoza until more than 15 months after her order of removal was entered. Therefore, I cannot accept the Government's contention that it could arbitrarily trigger the removal period by its unilateral action of choosing not to pursue Farez-Espinoza's removal for more than a year").

Because neither party addresses this issue and the record before me is devoid of any facts enabling me to determine whether the removal period should be tolled under §1231(a)(1)(C) on this basis, the record must be supplemented.

## CONCLUSION

Based on the foregoing, by November 19, 2010 the parties shall file and serve written submissions addressing the following:

1) the date on which the removal period accrued;

2) the applicability, if any, of 8 U.S.C. §1231(a)(1)(C) to toll the removal period;

3) the applicability, if any, of Farez-Espinosa, 600 F.Supp.2d 488 (S.D.N.Y. 2009) to this case;

4) what efforts, if any, were made by respondents to locate and detain petitioner between July 23, 2007 and November 25, 2009. See Lin v. Holder, 2010 WL 2836144, *6 (S.D.N.Y. 2010) (employing similar procedure).

**SO ORDERED.**

Dated: October 26, 2010

/s/ Jeremiah J. McCarthy_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge